**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT FRANKFORT**

**CIVIL ACTION NO. 12-50-DLB**

**BRIAN SCOTT WILLIS**                                                  **PLAINTIFF**

vs.                   **<u>MEMORANDUM OPINION & ORDER</u>**

**CAROLYN W. COLVIN,**[1] **Commissioner
SOCIAL SECURITY ADMINISTRATION**                           **DEFENDANT**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record and for the reasons set forth herein, will **remand** the Commissioner's decision for further proceedings consistent with this Opinion.

    **I.**     **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Brian Willis filed an application for disability insurance benefits (DIB) on August 14, 2008 (Tr. 41). Plaintiff alleges he became unable to work on November 28, 2007. (Tr. 147-49, 183). His application was denied initially and upon reconsideration. (Tr. 78-81, 83-85). At Plaintiff's request, an administrative hearing was conducted on August 18, 2010, by Administrative Law Judge (ALJ) Cam Oetter. (Tr. 41, 52-73). On September 17, 2010, the ALJ ruled that Plaintiff was not disabled and therefore not entitled to DIB. (Tr.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Acting Commissioner Carolyn W. Colvin is hereby substituted for Commissioner Michael J. Astrue as the defendant in this action.

1

38-51). This decision became the final decision of the Commissioner when the Appeals Council denied review on May 15, 2012. (Tr. 1-5).

On July 12, 2012, Plaintiff filed the instant action. This matter has culminated in cross-motions for summary judgment, which are now ripe for adjudication. (Docs. # 9 & 14).

## II. DISCUSSION

### A. Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See Cutlip*, 25 F.3d at 286. Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). However, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform her past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### B. The ALJ's Determination

At Step 1, the ALJ found that there was no evidence that Plaintiff had engaged in substantial gainful activity since November 28, 2007, the alleged onset of his disability. (Tr. 43). At Step 2, the ALJ found Plaintiff's obesity, degenerative disc disease, hypertension, and idiopathic peripheral neuropathy were severe impairments within the meaning of the regulations. (*Id.*).

At Step 3, the ALJ found that Plaintiff does not have an impairment or combination of impairments listed in, or medically equal to an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 44). Specifically, the ALJ found that Plaintiff's impairments were not severe enough to meet Listings 1.00 (musculoskeletal system), 4.00 (cardiovascular system), 9.00 (neurological system), or 11.00 (neurological system). (*Id.*).

At Step 4, the ALJ concluded that Plaintiff has the residual functional capacity (RFC) to perform light work with the following restrictions: he must be permitted to alternate between sit/stand postures at twenty to thirty minute intervals, if desired; he can perform

occasional climbing of ramps/stairs, balancing, stooping, crouching and crawling and operating foot controls; he can perform occasional pushing/pulling with the extremities; he should not climb ladders/ropes/scaffolds; and he should avoid concentrated exposure to vibration and all exposure to hazards such as unprotected heights. (*Id.*). Based upon this RFC, the ALJ concluded at Step 4 that Plaintiff was unable to perform any past relevant work. (Tr. 49).

Accordingly, the ALJ proceeded to the final step of the sequential evaluation. At Step 5, the ALJ found that there were a significant number of jobs in the national economy that Plaintiff could perform, including work as a cashier or a mail clerk. (Tr. 50-51). The ALJ thus concluded that Plaintiff was not disabled. (Tr. 51).

**C.    Analysis**

Plaintiff advances six arguments on appeal. First, Plaintiff argues that the ALJ failed to give good reasons for not according controlling weight to the opinion of his treating physician, Dr. Gary Reasor. Second, Plaintiff argues that the ALJ failed to give good reasons for not according controlling weight to the opinion of his consulting physician, Dr. Tyler Staley. Third, Plaintiff argues that the ALJ failed to give good reasons for not according controlling weight to the opinion of his treating physician, Dr. Mary Rutherford. Fourth, Plaintiff argues that the ALJ erred by improperly assessing his RFC. Fifth, Plaintiff argues that the ALJ erred in evaluating his credibility. And sixth, Plaintiff argues that the ALJ erred in determining that the Commissioner met its burden at Step 5 regarding alternative work Plaintiff could perform despite his impairments. Each of these arguments will be examined in turn.

4

## 1. The ALJ failed to give good reasons for not according controlling weight to the opinion of treating physician, Dr. Gary Reasor

Dr. Gary Reasor, a pain specialist, treated Plaintiff beginning in February 2008 for complaints of pain from his hips down to the bottom of his feet. (Tr. 46; 366-91). In April of 2008, Dr. Reasor diagnosed Plaintiff with a peripheral neuropathy of unknown etiology. (Tr. 374). Plaintiff underwent steroid injections on May 22, 2008 and June 26, 2008 for refractory back and leg pain. (Tr. 370-72). Dr. Reasor prescribed Oxycontin and Percocet and later noted that while this regimen relieved about fifty percent of Plaintiff's pain, Plaintiff still had significant pain in his feet. (Tr. 368). Dr. Reasor completed two disability statements for Plaintiff's disability insurance claim on October 29, 2008 and February 24, 2009, opining that Plaintiff's severe limitations precluded him from even minimal sedentary activity; that his foot and leg pain made standing and walking very difficult; and that he could not stand and walk for more than 15-20 minutes. (Tr. 466-67, 473-74). On December 3, 2008, Dr. Reasor opined that Plaintiff was disabled and unable to work due to "an idiopathic peripheral neuropathy affecting bilateral lower extremities causing lower extremity weakness and pain." (Tr. 418). The ALJ, however, ultimately assigned "little weight" to Dr. Reasor's opinion. (Tr. 47).

Plaintiff argues that the ALJ failed to follow the "treating physician rule" and failed to give good reasons for not according controlling weight to Dr. Reasor's opinion. The "treating physician rule" requires the ALJ to give "greater deference to the opinions of treating physicians than to the opinions of non-treating physicians." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009). Under the rule, "[a]n ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by

5

medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'" *Wilson*, 378 F.3d at 544 (citing 20 C.F.R. § 404.1527(c)(2)). If, however, the treating source's opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record, it is error to accord it controlling weight simply because it comes from a treating source. Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996).

If the ALJ elects not to accord the treating physician's opinion controlling weight, the regulations require him to give "good reasons" for the weight he gives to the treating source's opinion. 20 C.F.R. § 404.1527(c)(2); *Blakley*, 581 F.3d at 406-07. The reasons-giving requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Wilson*, 378 F.3d at 544-45 (citation omitted). In other words, the reasons-giving requirement obligates the ALJ to explain his application of the treating physician rule in writing. To meet this obligation, he must explain at least two facets of his application of the treating physician rule.

First, he must clarify whether the treating source's opinion was "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and was "not inconsistent with the other substantial evidence in [the] case record,'" and he must identify the evidence supporting his finding. *Id.* at 546. Second, he must determine what weight he accorded the treating source's opinion by considering the five factors listed in 20 C.F.R. §§ 404.1527(c): (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) consistency of the opinion with the record as a whole; and (5) the

specialization of the treating source. *Id.* at 544; *Blakley*, 581 F.3d at 406.

In explaining his application of the treating physician rule, the ALJ must not be vague or overly general. On the contrary, he must give "*specific reasons* for the weight given to the treating source's medical opinion, supported by the evidence in the case record," and those reasons "*must be sufficiently specific* to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. 96–2p, 1996 WL 374188, at *5 (1996) (emphasis added). The Sixth Circuit has held that an ALJ's failure to provide good reasons for electing not to give controlling weight to a treating source denotes a lack of substantial evidence and requires remand, unless it constitutes harmless error. *Wilson*, 378 F.3d at 544-50.

Here, the ALJ failed to give good reasons for failing to accord controlling weight to Dr. Reasor's opinion. First, he did not clarify whether Dr. Reasor's opinion was "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record.'" Second, he failed to adequately explain why he assigned little weight to Dr. Reasor's opinion. Specifically, he only addressed three of the requisite five factors listed in 20 C.F.R. § 404.1527(c)—the length, nature and extent of the treatment relationship and the frequency of examination, and Dr. Reasor's specialization. He did not touch on the supportability of the opinion or the consistency of the opinion with the record as a whole.

Third, the ALJ failed to give good reasons for the weight he gave to Dr. Reasor's opinion, and neglected to support his finding with evidence in the record. In particular, he found that Dr. Reasor's opinion was entitled to little weight because it was "vague" and "unpersuasive." (Tr. 47). Likewise, he found that Dr. Reasor's medical source statements

7

were entitled to little weight because they were "unpersuasive" (Tr. 49). However, the ALJ never explained what he found "vague" or "unpersuasive" about Dr. Reasor's opinion or his medical source statements, nor did he point to specific evidence supporting his finding.[2] It is true that in describing Dr. Reasor's treatment relationship with Plaintiff, he *mentioned* certain non-disabling evidence, such as the fact that steroid injections were administered with some success, and that he observed minimal tenderness to Plaintiff's lumbar spine. (Tr. 46-47). However, the ALJ never specified whether he *relied* on these facts in assigning little weight to Dr. Reasor's opinion. The Court is thus left without any understanding of why the ALJ found Dr. Reasor's opinion and medical source statements "vague" and "unpersuasive."

Defendant asserts that even if the ALJ's opinion is insufficiently reasoned, there is substantial evidence in the record supporting the ALJ's treatment of Dr. Reasor's opinion. While this may be true, the Sixth Circuit has made it perfectly clear that an ALJ's non-compliance with 20 C.F.R. § 404.1527(c)(2) is not excused simply because his decision is otherwise supported by substantial evidence in the record. *Wilson*, 378 F.3d at 546. As the appellate court explained

> A court cannot excuse the denial of a mandatory procedural protection simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely . . . . To hold otherwise, and to recognize substantial evidence as a defense to non-compliance with [§

---

[2] To be sure, the ALJ made one attempt to explain his rationale by stating that Dr. Reasor's opinion "is supported by Dr. [Tyler] Staley's determination." (Tr. 47). However, the Court finds this statement confusing. Dr. Staley did not opine total disability, and the ALJ found Dr. Staley's opinion "subjective and unsupported." (Tr. 47). It is thus entirely unclear how Dr. Staley's opinion supports Dr. Reasor's opinion, and even assuming that it does, why this fact demonstrates that Dr. Reasor's opinion is vague and unpersuasive.

8

> 1527(c)(2)], would afford the Commissioner the ability the violate the regulation with impunity . . . .

*Id.; see also, Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009) ("failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight given denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.") (internal citation and quotation omitted). Substantial evidence, therefore, cannot rectify the procedural violations committed by the ALJ.

Defendant also asserts that any shortcoming in the ALJ's treatment Dr. Reasor's opinion constitutes harmless error under *Wilson*. *Wilson* noted in dicta that noncompliance with § 1527(c)(2) may constitute harmless error where the ALJ's decision "[meets] the goal" of § 1527(c)(2) by providing good reasons, even though it fails to comply with the section's stated requirements. Further developing this exception, the Sixth Circuit subsequently held that an ALJ met the goal of § 1527(d)(2) by "indirectly attacking" the treating source's opinion. *See*, e.g.*, Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x. 462, 472 (6th Cir. 2006).

Defendant contends that the ALJ satisfied the goals of § 1527(c)(2) by "discussing the medical evidence and opinions of record and by indirectly attacking the [medical source statements] of Drs. [Mary] Rutherford and Reasor." (Doc. # 14, at 12). Defendant's reasoning, however, is both confusing and unpersuasive:

> Although the ALJ did not specifically assign weight to the opinions of Drs. Reasor and Rutherford, he grouped their opinions together when finding that Dr. Rutherford's treatment record consisted mostly of Plaintiff's reported symptoms, and the few objective medical signs in her record were not sufficient to render Plaintiff disabled (Tr. 48-49). The ALJ specifically found Dr. Reasor's MSSs unpersuasive (Tr. 49), so it follows that he also found Dr. Rutherford's MSS unpersuasive. The ALJ found Dr. Reasor's MSSs and Staley's opinion unpersuasive (Tr. 47, 49). When finding Dr. Staley's opinion

9

> unpersuasive, the ALJ accorded it little weight (Tr. 47). Thus, it is reasonable to conclude he also accorded little weight to Dr. Reasor's unpersuasive MSSs and, thus, to Dr. Rutherford's MSS. Although the ALJ did not accord specific weight to the MSSs of Drs. Reasor and Rutherford, it is apparent from the wording in the ALJ's decision that he accorded little weight to both opinions. Thus, [the ALJ] properly met the goal of 20 C.F.R. [§ 404.1527(c)(2)] by discussing the medical evidence and opinions of record and by indirectly attacking the MSSs of Drs. Rutherford and Reasor.

(Doc. # 14, at 11-12). Rather than attempting to decipher the meaning of this argument, the Court simply notes that despite Defendant's broad and vague assertions (i.e., "it is apparent from the wording in the ALJ's decision . . ."), it fails to highlight where in his opinion the ALJ "indirectly attacks" Dr. Reasor's opinion. Moreover, the Court's independent review of the ALJ's opinion yields no evidence of such an indirect attack.

In the end, Defendant's arguments effectively invite the Court to speculate as to why the ALJ disregarded Dr. Reasor's opinion—something the Court cannot and will not do. *See, generally*, *Bowen v. Comm'r. of Soc. Sec.*, 478 F.3d 742, 749 (6th Cir. 2007) ("The problem, again, is that we just do not know why the ALJ disregarded [the treating source's assessment], and the goals of [§ 1527(c)(2)] cannot be satisfied by bald speculation."). To speculate as to the ALJ's reasons would defeat the two-fold purpose of the reason-giving requirement: to ensure that the ALJ actually applies the treating physician rule, and to inform the claimant of why an administrative bureaucracy has declared she is not disabled despite a treating physician's opinion that she is. *Wilson*, 378 F.3d at 544-45 (citations omitted). Defendant's arguments thus falls short of the mark, and the Court therefore finds that the ALJ's procedural violations regarding Dr. Reasor's opinion were not harmless error. Accordingly, the Court will remand the Commissioner's decision for further proceedings.

**2. The ALJ did not err in his treatment of Dr. Tyler Staley's opinion**

Contrary to Plaintiff's assertion, the ALJ was not required to give good reasons for discounting the opinion of Dr. Tyler Staley. The reasons-giving requirement only applies to treating sources. 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your *treating source's opinion.*") (emphasis added). Since Dr. Staley only examined Plaintiff on one occasion, he cannot be considered a treating physician. *See Atterberry v. Sec'y Health & Human Servs.*, 871 F.2d 567, 572 (6th Cir.1989) (physician who examined claimant only once was not a treating physician). Unlike treating source opinions, consultative examiners' opinions are not entitled to any "special degree of deference." *Barker v. Shalala*, 40 F .3d 789, 794 (6th Cir.1994). Because Dr. Staley was a one-time examiner, the ALJ properly decided that his opinion was not entitled to special deference or weight.

**3. The ALJ should clarify his discussion of Dr. Rutherford's opinion on remand**

Next, Plaintiff argues that the ALJ committed two errors in discussing the opinion of his treating physician, Dr. Mary Rutherford: (1) he failed to state what weight he assigned her opinion; and (2) he failed to give good reasons for not according her opinion controlling weight.

Dr. Rutherford, a family practitioner, began treating Plaintiff in November of 2009 for follow-up on his idiopathic peripheral neuropathy and elevated blood pressure. Throughout her treatment of Plaintiff, she noted that he reported chronic pain, trouble sleeping, vomiting, depression, and other issues. Like Dr. Reasor, she assessed him as having idiopathic peripheral neuropathy and elevated blood pressure. (Tr. 451). She authored a

11

medical source statement imposing various restrictions on Plaintiff, including a maximum of one hour sitting and one hour standing or walking during an eight-hour workday. (Tr. 477-79). She also stated that Plaintiff did not require a hand-held assistive device. (*Id.*). She wrote that the objective clinical findings supporting her medical source statement were the tenderness in Plaintiff's lower legs and his diminished reflexes. (Tr. 479). The ALJ declined to accord controlling weight to Dr. Rutherford's opinion, but made no determination as to what weight he did accord it.

Because the Court is remanding the ALJ's decision for further consideration of Dr. Reasor's opinion, the Court sees no reason to discuss Dr. Rutherford's opinion in detail at this juncture. The Court simply notes that the ALJ has provided three clear reasons for discrediting Dr. Rutherford's opinion. First, the ALJ stated that Dr. Rutherford's opinion did not support a disability finding because it consisted mostly of Plaintiff's reported symptoms. (Tr. 48). Second, the ALJ cited Dr. Rutherford's treatment notes, which stated that despite Plaintiff's subjective complaints, he was "well controlled on Oxycontin" and his sleep was aided by Flexeril. (*Id.*). Third, the ALJ noted that despite Dr. Rutherford's severe restrictions on Plaintiff's ability to stand and walk, she did not recommend the assistance of a "hand held assistive device," such as a cane. (Tr. 49).

The Court defers its determination of whether these reasons constitute "good reasons" until such time as the ALJ has clarified two points on remand. First, he should clarify what weight he assigned Dr. Rutherford's opinion. And second, he should explain his statement that "the few objective signs [in Dr. Rutherford's medical source statements] are not clearly disabling." (Tr. 48). The ALJ failed to inform the Court which "objective signs" he was referencing, and why they are not clearly disabling. Further explanation of

12

these points would assist the Court in understanding why the ALJ assigned less than controlling weight to Dr. Rutherford's opinion.

### 4. The Court does not reach Plaintiff's remaining arguments

Plaintiff's remaining arguments are that (1) the ALJ erred by improperly assessing his RFC, (2) the ALJ erred in evaluating his credibility, and (3) the ALJ erred in determining that the Commissioner met its burden at Step 5 regarding alternative work Plaintiff could perform despite his impairments. Ordinarily, the Court would be inclined to address such arguments to provide the ALJ further guidance on remand. However, each of these arguments depend, to one degree or another, on the ALJ's treatment of the opinions of Drs. Reasor and Rutherford. Therefore, the Court cannot address these arguments until the ALJ has re-considered his treatment of those opinions on remand.

### III. CONCLUSION

For the reasons stated herein, the Court concludes that the ALJ failed to failed to follow SSA regulations and a remand is required. Accordingly, for the reasons stated,

**IT IS ORDERED** as follows:

1. Plaintiff's motion for summary judgment (Doc. # 9) be, and it hereby is, **GRANTED**;

2. Defendant's motion for summary judgment (Doc. # 14) be, and it hereby is, **DENIED;**

3. This action be, and it is, hereby **REMANDED** to the Commissioner under sentence four of 42 U.S.C. § 405(g) with instructions to adequately explain his treatment of the opinions of Drs. Reasor and Rutherford, consistent with this Memorandum Opinion

and Order; and

    4.      A Judgment will be entered contemporaneously herewith.

This 28th day of August, 2013.



G:\DATA\SocialSecurity\MOOs\Frankfort\12-50 MOO remanding ALJ opinion.wpd